# United States Court of Appeals for the Federal Circuit

2007-5069

ST. CHRISTOPHER ASSOCIATES, L.P.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Harry J. Kelly, Nixon Peabody LLP, of Washington, DC, argued for plaintiff-appellant.

Sheryl L. Floyd, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Acting Attorney General and Jeanne F. Davidson, Director. Of counsel on the brief was Robert T. Farrell, Department of Housing and Urban Development, of Boston, Massachusetts.

Carl A.S. Coan, III, Coan & Lyons, of Washington, DC, for amici curiae American Association for Homes and Services for the Aging et al.

Appealed from: United States Court of Federal Claims

Judge Susan G. Braden

# United States Court of Appeals for the Federal Circuit

2007-5069

ST. CHRISTOPHER ASSOCIATES, L.P.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 03-CV-2221, Judge Susan G. Braden.

---

DECIDED: January 9, 2008

---

Before LOURIE, GAJARSA, and PROST, Circuit Judges.

PROST, Circuit Judge.

St. Christopher Associates, L.P. ("St. Christopher") sued the U.S. Department of Housing and Urban Development ("HUD") for alleged violations of certain statutes, regulations, and agency guidance; for breach of contract; and for a taking in violation of the Fifth Amendment, because HUD failed to consider its request for a rent increase. The U.S. Court of Federal Claims granted the government's motion to dismiss and motion for summary judgment. St. Christopher Assocs. v. United States, 75 Fed. Cl. 1 (2006). St. Christopher appeals the grant of summary judgment with respect to the breach of contract claim and the Fifth Amendment takings claim.

We affirm the Court of Federal Claims, agreeing that the Regulatory Agreement does not expressly, nor by implication, require HUD to consider a rent increase request and, therefore, HUD did not breach the Regulatory Agreement by not considering the request. In addition, we find no Fifth Amendment taking by HUD's failure to consider the request.

BACKGROUND

On December 19, 1984, HUD entered into a Provisional Workout Arrangement ("PWA") with St. Christopher in which St. Christopher became the owner of an apartment project for the elderly ("the Apartments") in Hartford, Connecticut. Under the PWA, St. Christopher agreed to make the mortgage and interest arrearage payments of the former owner. On December 28, 1984, St. Christopher and HUD executed an Agreement for Modification of Note and Mortgage ("Modification Agreement"), incorporating the terms of the PWA, and a Regulatory Agreement. The Regulatory Agreement placed restrictions on St. Christopher's use and operation of the Apartments.

The federal housing program allowed the previous owner, who ultimately defaulted on his HUD loan, to acquire a forty-year loan at a one percent interest rate. The owner was required to pass along the benefits of the federal interest subsidy to the tenants by charging them a lower rent. At the time St. Christopher acquired the Apartments, the prior owner had incurred large mortgage interest arrearages, totaling approximately $767,000. St. Christopher made two of six annual mortgage interest arrearage payments, but did not make any payments after December 28, 1986.

On October 1, 1984, prior to execution of the PWA, the Modification Agreement, and the Regulatory Agreement, HUD approved a rent increase request submitted by St. Christopher based upon the "cost of electricity, reserve for replacements and operational expenses." Id. at 3. During the 1980s, St. Christopher made several additional rent increase requests to HUD. HUD did not approve any of the requested rent increases, contending that it was not obligated to consider them because St. Christopher had failed to make the mortgage interest arrearage payments pursuant to the PWA and the Modification Agreement.

The first rent increase request was made in January 1988. According to an internal HUD memorandum dated May 9, 1988, HUD determined that a rent increase was not justified based on the submitted information, but that St. Christopher could submit supplemental information in support of a rent increase.

St. Christopher submitted a second request for a rent increase on December 5, 1988. HUD denied the request because St. Christopher had failed to make the annual workout payment of $92,000 due on December 28, 1987. HUD advised St. Christopher that an agreement must be reached between HUD and St. Christopher regarding "any finding of a violation under the mortgage or regulatory agreement" before any action can be taken on the rent increase request.

On January 6, 1989, HUD sent St. Christopher a letter stating that HUD had not received mortgage interest arrearage payments for 1988 and 1989, resulting in a total delinquency of $184,000. HUD informed St. Christopher that if HUD did not receive the payment within thirty days, HUD would commence foreclosure proceedings. According to the Court of Federal Claims, it is not clear what happened between 1989 and 1996.

Id. at 5. On November 6, 1996, HUD requested that St. Christopher submit a plan for complying with the PWA. Id.

On September 25, 1997, St. Christopher submitted an additional request to increase the rent at the Apartments. HUD did not respond to this request.[1] It is the September 25, 1997, rent increase request that is the subject of this appeal.

In 1998, HUD notified St. Christopher that it was initiating foreclosure proceedings, and, on January 3, 2001, HUD issued a Notice of Default and Foreclosure.

On May 29, 2002, St. Christopher submitted one last rent increase request to HUD. HUD granted that request on July 2, 2002. St. Christopher filed the present lawsuit on September 24, 2003. Id. at 6. Thereafter, St. Christopher sold the Apartments and paid HUD the outstanding mortgage interest arrearages.

The Court of Federal Claims dismissed the complaint for lack of jurisdiction to the extent St. Christopher sought relief based on violations of the statutes, regulations and agency guidance independent of any contractual obligation, concluding none of these were money-mandating. Id. at 10. The court granted summary judgment with respect to the remainder of the complaint, finding that HUD did not breach the express provisions of the Regulatory Agreement or violate the Fifth Amendment takings clause by failing to respond to St. Christopher's request for a rent increase. Id. at 13-14.

---

[1] HUD later claimed that it had no knowledge of the request. The Court of Federal Claims held that HUD's statement was insufficient to rebut the presumption of receipt and concluded as a matter of law that HUD had received the request. Id. at 12. For the purpose of this appeal, HUD does not dispute that it received the request. Oral Arg. at 16:35-57, available at http://www.cafc.uscourts.gov/oralarguments/mp3/2007-5069.mp3.

St. Christopher appeals the breach of contract claim and the Fifth Amendment takings claim.[2] We have jurisdiction pursuant to 28 U.S.C. 1295(a)(3).

DISCUSSION

"We review the Court of Federal Claims' grant of summary judgment without deference." Agwiak v. United States, 347 F.3d 1375, 1377 (Fed. Cir. 2003). Contract interpretation is a matter of law, which we review de novo. Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1368 (Fed. Cir. 2004).

The essence of St. Christopher's appeal is that HUD was required to consider its 1997 request for a rent increase, and HUD's failure to consider the request constituted either a breach of contract or a taking under the Fifth Amendment. We take each issue in turn.

I

In support of its breach of contract claim, St. Christopher contends that the Regulatory Agreement both expressly and implicitly requires the government to consider a rent increase request.

A

St. Christopher relies on sections 4(a) and 4(l) of the Regulatory Agreement as the basis for an express duty by HUD to consider a rent increase request. Those sections provide:

The owners covenant and agree that:

2 St. Christopher has conceded that none of the referenced statutes, regulations, or agency guidance is money-mandating and, thus, the Court of Federal Claims lacked jurisdiction to consider its complaint to the extent it sought relief based directly on a violation of a statute, regulation, or agency guidance.

> (a) with the prior approval of the [Federal Housing] Commissioner, [the owners] will establish for each dwelling unit (1) a basic rental charge determined on the basis of operating the project with payments of principal and interest under a mortgage bearing interest at one percent and (2) a fair market rental charge determined on the basis of operating the project with payments of principal, interest and mortgage insurance premiums due under the insured mortgage on the project.
>
> . . . .
>
> (l) no change will be made in the basic rental or fair market rental unless approved by the Commissioner . . . .

Regulatory Agreement §§ 4(a), (l) (emphases added). According to St. Christopher, the government breached these two provisions of the Regulatory Agreement when it failed to consider St. Christopher's rent increase request. These provisions, however, are clearly directed to the obligations of the owners, requiring the owners to seek approval in establishing and changing the fair market rental charge. The provisions impose no duty on HUD. Hence, the Court of Federal Claims correctly concluded that there is no basis to find a breach of contract by HUD in its failure to consider the September 25, 1997, request based on the express language in the Regulatory Agreement.

B

Alternatively, St. Christopher argues that the Regulatory Agreement implicitly requires HUD to consider a rent increase request. While St. Christopher acknowledges that the Regulatory Agreement does not incorporate by reference any statutory, regulatory, or agency guidance, it nevertheless contends that the Regulatory Agreement inherently includes an obligation to consider a rent increase request based on underlying statutes, regulations, and agency guidance. We first consider whether the cited statutes, regulations, or agency guidance contain an express obligation on the part of HUD to consider a rent increase request, and then whether the statutes, regulations, or agency guidance can be implied into the Regulatory Agreement.

1

St. Christopher relies on section 236 of the National Housing Act, 24 C.F.R. §§ 236.55(a), 245.325(b), and HUD Handbook §§ 7-1, 7-21, and 7-25, for an obligation on the part of HUD to consider a rent increase request. While we agree that an express obligation may be found in 24 C.F.R. § 245.325(b) and HUD Handbook § 7-25, we find no such obligation in any of the other provisions. We look first at those provisions where we fail to find an express obligation and then consider the two provisions where we find an obligation.

Section 236 of the National Housing Act provides in relevant part:

> (i) For each dwelling unit there shall be established, with the approval of the Secretary, a basic rental charge and fair market rental charge
> (ii) The basis rental charge shall be
> (I) the amount needed to operate the project with payments of principal and interest due under a mortgage bearing interest at the rate of 1 percent per annum . . . .
> . . . .
> (iii) The fair market rental charge shall be
> (I) the amount needed to operate the project with payments of principal, interest, and mortgage insurance premium which the mortgagor is obligated to pay under the mortgage covering the project . . . .

Pub. L. No. 90-448, § 201(a), 82 Stat. 476, 498 (1968) (codified as amended at 12 U.S.C. § 1715z-1(f)(1)(A) (2000)) (emphases added). St. Christopher contends that because the rental charge is the amount needed to operate the project, there is an implied obligation on the part of HUD to consider, and approve if necessary, a rent increase request.

St. Christopher, however, reads too much into the statute. Section 236 requires only that a rental charge be established with the approval of the Secretary. While it places a duty on the owner to establish a rental charge and to seek approval from the

Secretary, it places no obligation on HUD to consider a request to increase the rent. Hence, we find nothing in section 236 to obligate HUD to consider a rent increase request.

Next, St. Christopher relies on the regulation, 24 C.F.R. § 236.55(a), for an obligation on the part of HUD to consider a rent increase request. It provides:

> Approved rental charge. The [Federal Housing] Commissioner will establish, and the mortgagor will maintain, a Basic Rent and Market Rent for each dwelling unit.

24 C.F.R. § 236.55(a) (1995) (saved by 24 C.F.R. § 236.1(b)(1997)). While this regulation obligates HUD to establish a basic and market rent, it places no express obligation on HUD to consider a request to increase the rent.

St. Christopher also refers to several sections of the HUD Handbook as the source of an obligation on the part of HUD to consider a rent increase request. The first, section 7-1, provides:

> HUD's prime interest is in promoting the efficient management and continued financial viability of its projects. <u>In reviewing requests from owners concerning rents and charges, the [HUD] Field Office should be guided by the fact that these rents and fees should and must provide sufficient and adequate funding to operate the projects</u>.

HUD Handbook 4350.1 REV-1, Occupancy Requirements of Subsidized Multifamily Housing Programs, ch. 7 (hereinafter "HUD Handbook") § 7-1 (1992) (emphasis added). Section 7-21 provides:

> When current rent levels are NOT sufficient to cover anticipated or unavoidable increases in operating costs, <u>owners should request that HUD approve an increase in rents</u>.

<u>Id.</u> (emphasis added). According to St. Christopher, these provisions establish that an increase in rent is appropriate in order to ensure that the rent is adequate to cover

operating costs. St. Christopher argues that implicit in these provisions is a requirement that HUD consider and approve a proper request to increase rent.

We disagree. Section 7-1 merely provides the basis for HUD to evaluate whether a rental charge is appropriate. Section 7-21 establishes only when an owner should seek an increase in rent. Neither section places an express duty on HUD to consider a rent increase request.

In contrast to each of the provisions discussed above, there are two provisions cited by St. Christopher in which we do find an express obligation on the part of HUD to consider a rent increase request. First, the regulation, 24 C.F.R. § 245.325, provides:

> (a) When processing a request for an increase in maximum permissible rents, HUD shall take into consideration reasonably anticipated increases in project operating costs . . . .
> (b) After HUD has considered the request for an increase in rents, has found that it meets the requirements of § 245.320, and has made its determination to approve, adjust upward or downward, or disapprove the request, it will furnish the mortgagor with a written statement of the reasons for approval, adjustment upward or downward, or disapproval. . . .

(Emphases added). This regulation establishes what HUD should consider in deciding whether or not to grant a rent increase and mandates that HUD provide a written statement explaining the basis for its approval, adjustment, or disapproval of the request. It does indeed obligate HUD to consider and respond to a rent increase

request, albeit within an unspecified time period.[3]

Second, section 7-25 of the HUD Handbook provides in relevant part:

> FIELD MANAGEMENT OF THE RENT REQUEST PROCESS.
> Field Offices must establish a tracking system that will facilitate and monitor compliance with the following process times:
>
> . . . .
>
> B. When the Rent Increase Exceeds the Maximum Potential,
>
> . . . .
>
> 3) Projects subject to 24 CFR Tenant Comment procedures. <u>Issue decision letters within 30 days after receipt of the formal rent increase request</u> . . . .
>
> . . . .
>
> D. You may not require that projects routinely submit materials NOT listed in Section 4, paragraph 7-22. You may require additional submissions ONLY if the actual or projected expense estimates appear to be excessive . . . .
> NOTE: <u>Your requests for additional information must be made in writing and within 30 days of receipt of initial package</u>.

(Emphases added). This provision of the HUD Handbook clearly requires HUD to respond to a rent increase request, or request additional information, within thirty days of the request.

In sum, of all the statutory, regulatory, and HUD Handbook provisions cited by St. Christopher, only 24 C.F.R. § 245.325(b) and HUD Handbook section 7-25 place any obligation on HUD to consider a request to increase rent, and only section 7-25

---

[3] The government counters that the regulation stipulates that in order for HUD to act on a rent increase request, it must first assure itself that the requester has satisfied the requirements set forth in 24 C.F.R. § 245.320. Here, the government argues, St. Christopher had not satisfied those requirements. Specifically, it contends that St. Christopher defaulted on its obligation to make interest arrearage payments to HUD and did not certify that it had posted notice of the rent increase request to the tenants for at least thirty days prior to filing the request with HUD. The Court of Federal Claims did not reach whether St. Christopher had met its § 245.320 obligations because it found no duty on the part of HUD under the Regulatory Agreement to consider the September 25, 1997, rent increase request. <u>St. Christopher</u>, 75 Fed. Cl. at 13. Thus, resolution of this issue, if necessary, would require a remand.

sets a time period for HUD to respond. Neither provision is incorporated by reference into the Regulatory Agreement. Therefore, in order to find that HUD had a duty to consider a rent increase request under the Regulatory Agreement, we would need to find that either or both of the two provisions are incorporated into the Regulatory Agreement by implication.

2

St. Christopher's rationale for looking to the statutes, regulations, or agency guidance in interpreting the Regulatory Agreement is not that the Regulatory Agreement is ambiguous and that, therefore, the court needs to look to the statutes and regulations in order to resolve the ambiguity. Instead, St. Christopher argues that the Regulatory Agreement should be construed in light of the statutory program that it implements and the purpose of that program. According to St. Christopher, the section 236 program serves to encourage the private sector to provide affordable housing, and the statutes and regulations were designed to stimulate private sector participation in the program. Therefore, the government, in establishing the section 236 program, assumed certain implied obligations essential to carrying out the program. In essence, St. Christopher is arguing that although the statutory and regulatory provisions are not expressly incorporated by reference into the Regulatory Agreement, we should incorporate the provisions into the Regulatory Agreement by implication and find that the government breached the Regulatory Agreement when it violated the provisions.

This court has been reluctant to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation. Smithson v. United States, 847 F.2d 791, 794 (Fed. Cir. 1988).

In Smithson, the court warned that wholesale incorporation of regulations into a contract would allow the contracting party to "choose among a multitude of regulations as to which he could claim a contract breach—and thus '[a] wholly new ground of obligation would be summarily created by mere implication.'" Id. (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1010 (Ct. Cl. 1967)). Whereas in Smithson a clause in the contract made a general reference to the regulations, here, there is no reference whatsoever in the Regulatory Agreement to the implementing regulations or to the HUD Handbook. Therefore, we cannot conclude that the Regulatory Agreement incorporates 24 C.F.R. § 245.325(b) or HUD Handbook section 7-25 by implication.

The cases cited by St. Christopher do not compel a different result. Each of the cited cases involved not section 236, but another section of the National Housing Act, governed by different implementing regulations. Further, in each of the cited cases, there was express language in the contract that imposed a duty on the government to act on a rent increase request. In Crest A Apartments Ltd., II v. United States, the Court of Federal Claims found that the Housing Assistance Payments ("HAP") contract between the owner and the government imposed a duty on the government to process rent increase requests. 52 Fed. Cl. 607, 611 (2002). The HAP contract expressly required that "[c]ontract rents . . . shall be adjusted by HUD in accordance with HUD regulations," and thereby incorporated by reference the regulation which allowed HUD to choose between two methods for annual rent adjustment. Id. In Brighton Village Associates v. United States, this court found that HUD had breached a HAP contract by failing to make annual adjustments to rents. 52 F.3d 1056, 1061 (Fed. Cir. 1995). Here again, the HAP contract specifically required that HUD annually adjust contract rents by

one of two methods. Id. In Christopher Village, L.P. v. Retsinas, the Fifth Circuit held that HUD had acted arbitrarily and capriciously in refusing to consider a rent increase request. 190 F.3d 310, 316 (5th Cir. 1999). In that case, too, the Regulatory Agreement itself required review of a rent increase request by HUD. Id. In the related case before this court, Christopher Village, L.P. v. United States, the Fifth Circuit's ruling was found to be void for lack of jurisdiction and thus not entitled to preclusive effect in the Court of Federal Claims. 360 F.3d 1319, 1333 (Fed. Cir. 2004). Yet, in dictum, this court stated: "[W]hile we doubt the correctness of the Fifth Circuit's decision that the government breached in refusing to consider the appellants' rent increase request, we are reluctant to address the question of the government's breach on the current record." Id. In sum, there is simply no Federal Circuit precedent holding that it is proper to read into a contract statutes, regulations, or agency guidance when they are not incorporated by reference into the contract.[4]

Because we find that the Regulatory Agreement does not incorporate by implication either 24 C.F.R. § 245.325(b) or HUD Handbook section 7-25, we find no basis to conclude that HUD breached the Regulatory Agreement by failing to consider St. Christopher's September 25, 2007, rent increase request. We, therefore, conclude

---

4 St. Christopher's reliance on Roedler v. Department of Energy, 255 F.3d 1347 (Fed. Cir. 2001), and Barsebäck Kraft AB v. United States, 121 F.3d 1475 (Fed. Cir. 1997), is similarly misplaced. Roedler holds only that when it is unclear from the contract whether a third party is a beneficiary, the court may look to the governing statute to attempt to adduce whether the party is an intended third party beneficiary. Roedler, 255 F.3d at 1352. In Barsebäck, the court held that a pricing provision in contracts between foreign corporations and the Department of Energy ("DOE") was unambiguous and provided that charges to be paid to DOE could be determined in accordance with any pricing policy in effect at time of performance. 121 F.3d at 1480.

that the Court of Federal Claims did not err in granting summary judgment on the breach of contract claim.

II

In the alternative, St. Christopher argues that HUD's failure to consider the September 25, 1997, rent increase request was a taking under the Fifth Amendment for which St. Christopher is entitled to compensation. According to St. Christopher, HUD's failure to consider its request resulted in a decrease in its return on and deterioration in the condition of the Apartments, which amounted to a physical invasion of St. Christopher's property. St. Christopher contends that in entering into the Regulatory Agreement, the government was not acting in its commercial capacity because the purpose of the Regulatory Agreement was to carry out a sovereign interest of the government—to provide affordable housing. Moreover, St. Christopher asserts that because the Regulatory Agreement did not confer a right on St. Christopher to have its rent increase request considered by HUD, St. Christopher could only defend that right through a claim under the takings clause.

We disagree. In general, takings claims do not arise under a government contract because, as stated by the Court of Federal Claims, the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract. Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001). As stated by our predecessor court:

> [T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.

Sun Oil Co. v. United States, 572 F.2d 786, 818 (Ct. Cl. 1978) (citations omitted). Here, HUD entered into the Regulatory Agreement with St. Christopher and, therefore, was acting in its commercial capacity, not in its sovereign capacity, when it declined to consider St. Christopher's rent increase request. Likewise, St. Christopher established its rights with respect to increasing rents for the Apartments when it voluntarily entered into the Regulatory Agreement with HUD. Hence, any claim that St. Christopher may have asserted should be a breach of contract claim, not a taking claim.

Even if we were to conclude that St. Christopher could pursue a claim outside of the contract, St. Christopher has not clearly stated what type of taking it is alleging. The court cannot find a physical taking of property because HUD has not authorized physical occupation of, or taken title to, the property occupied by the Apartments. Norman v. United States, 429 F.3d 1081, 1088-89 (Fed. Cir. 2005). There is not a categorical taking of property because HUD has not deprived St. Christopher of all beneficial use of the property occupied by the Apartments. Id. at 1090-91.

St. Christopher's reliance on Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003), suggests that it is alleging a regulatory taking. In Cienega, the owners of low-income housing had entered into loan agreements with private lenders that were subsidized by HUD. Id. at 1325. Thereafter, the government enacted two statutes that prevented the owners from prepaying and exiting their mortgages after twenty years, and repossessing under real property law. Id. at 1326-27. The court applied the Penn Central factors and held that the government's action, in enacting the statutes, constituted a compensable, temporary, regulatory taking. Id. at 1353; see Penn Cent. Transp. Co. v. City of N.Y., 438 U.S. 104, 124 (1978). In so finding, the court

considered that: (1) enactment of the statutes was for a public purpose and placed the expense disproportionately on the owners; (2) the owners suffered serious financial loss as a consequence; and (3) the owners bought the property in reliance on the right to prepay and exit the housing program in twenty years. Cienega Gardens, 331 F.3d at 1337-53.[5] Here, in contrast, St. Christopher does not complain of an action taken by HUD, but rather of inaction. The failure by HUD to consider its rent increase request was not for a public purpose. Moreover, it is impossible to conclude that HUD's failure to consider alone (and not its failure to approve) resulted in serious financial loss to St. Christopher. Accordingly, there was no taking of property by the government for which compensation is due.

CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment for the government by the Court of Federal Claims.

AFFIRMED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: 3/3/08

[5] The court's analysis pertained only to the four model plaintiffs. With respect to the other plaintiffs, the court remanded for further development of the record. Cienega Gardens, 331 F.3d at 1353-54. The Court of Federal Claims' application of the Penn Central factors to the non-model plaintiffs was thereafter appealed. This court vacated and remanded for consideration of the impact of prepayment restriction on the property as a whole, the offsetting benefits afforded by the statutory scheme, and the duration of the legislation. Cienega Gardens v. United States, 503 F.2d 1266 (Fed. Cir. 2007).